IN THE UNITED STATES COURT FOR THE DISTRICT OF UTAH

CENTRAL DIVISION

| | |
|---|---|
| KENNETH G. HANSEN, et al.,<br><br>    Plaintiffs,<br><br><br><br>vs.<br><br><br><br>MARC S. JENSON, et al.,<br><br>    Defendants. | MEMORANDUM DECISION AND ORDER GRANTING IN PART AND DENYING IN PART MOTION FOR SUMMARY JUDGMENT ON CLAIMS AGAINST MARK ROBBINS<br><br><br><br><br><br>Case No. 2:04-CV-867 TS |

This matter was originally set for oral argument on the following motions: (1) Plaintiffs' Motion for Partial Summary Judgment in Favor of Plaintiffs David Rutter and Todd Fisher Against Defendant Spencer Brannan; (2) Motion for Summary Judgment on Claims Against Mark Robbins; (3) Bank One's Motion for Summary Judgment; (4) Plaintiffs' Motion to Amend Complaint to Conform to Evidence; and (5) Bank One's Motion for Separate Trial.

Before argument on the Motions, the Court was informed that Plaintiffs had settled their claims with Bank One.  Thus, Bank One's motions are now rendered moot and will be dismissed as such.  Because of the resolution of the claims against Bank One, the Court finds Bank One's opposition to Plaintiffs' Motion to Amend is now moot, making that Motion unopposed.  As a

1

result, the Court will grant Plaintiffs' Motion to Amend. The Court was further informed that Plaintiff's Motion for Partial Summary Judgment had not been served on Defendant Brannan. Therefore, the Court makes no decision on that Motion at this time.

Because of these developments, the Court need only address Defendant Robbins' Motion for Summary Judgment and Defendant Jenson's joinder therein.[1] As set forth in the parties' papers, the only remaining claims against Defendant Robbins are Plaintiffs' RICO and civil conspiracy claims.[2] The Court will limit its discussion to those claims. As set forth below, the Court will grant Robbins, and all other Defendants, summary judgment on Plaintiffs' RICO claims, but will deny summary judgment on the civil conspiracy claim.

## I. SUMMARY JUDGMENT STANDARD

Summary judgment is proper if the moving party can demonstrate that there is no genuine issue of material fact and it is entitled to judgment as a matter of law.[3] In considering whether genuine issues of material fact exist, the Court determines whether a reasonable jury could return a verdict for the nonmoving party in the face of all the evidence presented.[4] The Court is

---

[1] Defendant Marc Jenson did not file his own motion for summary judgment, but instead joined in Mark Robbins' Motion for Summary Judgment.

[2] Plaintiffs have abandoned their unjust enrichment and conversion claims as against Defendant Robbins. However, Plaintiffs have retained their claim against Defendant Jenson for unjust enrichment. As Jenson has not filed a motion for summary judgment on Plaintiffs' claims against him, the Court will not rule on Plaintiffs' unjust enrichment claim as it relates to Jenson.

[3] Fed. R. Civ. P. 56(c).

[4] *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986); *Clifton v. Craig*, 924 F.2d 182, 183 (10th Cir. 1991).

required to construe all facts and reasonable inferences in the light most favorable to the nonmoving party.[5]

## II. FACTUAL BACKGROUND

For the purposes of this Motion, the following facts are not in dispute. Mark Robbins was the owner and manager of Wasatch Cycle and related entities (the "Bike Companies"). Cherokee & Walker purchased an interest in the Bike Companies and loaned money to the Bike Companies. Robbins learned that another bike company—Mongoose—was for sale and sought to purchase Mongoose. Before doing so, Robbins wanted to buy out Cherokee & Walker's interest in the Bike Companies.

Robbins entered into an agreement with Marc Jenson—a hard money lender—whereby Jenson would provide Robbins an $8 million bridge loan so that Robbins could purchase Cherokee & Walker's interest in the Bike Companies. Eventually sufficient funds were raised to buy out Cherokee & Walker's interest and Marc Jenson was given an interest in the Bike Companies in exchange for the loan.

Plaintiffs are those individuals/entities that provided funds so that Cherokee and Walker's interest could be purchased. Rutter and Fibertel were members of K&D Development, LC. Fisher was the CEO and principal shareholder of Fibertel. K&D owned a real estate parcel in Lehi, valued at over $2 million (the "Lehi Property"). On September 26, 2000, Rutter executed a Deed of Trust on the Lehi Property to secure a $345,000 loan from Dale Holt to Spencer Brannan. Brannan told Rutter that in exchange for allowing the Lehi Property to be pledged as collateral, the $400,000 mortgage on the property would be paid off.

---

[5]*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Wright v. Southwestern Bell Tel. Co.,* 925 F.2d 1288, 1292 (10th Cir. 1991).

Brannan later approached Rutter stating that more money was needed. Rutter agreed to place an additional encumbrance on the Lehi Property. Rutter agreed to pledge the Lehi Property to secure an additional loan of $706,000 from Creekside Funding to Brannan. Rutter also personally guaranteed the $706,000 loan. Brannan never paid on either loan and the property was foreclosed upon.

After losing the Lehi Property, Rutter contacted Brannan. Brannan promised to repay K&D's losses. On May 17, 2002, Rutter and Fisher entered into a Letter Agreement with Brannan (the "Letter Agreement"). Under the Letter Agreement, Brannan agreed to compensate Rutter and Fisher for the loss of the Lehi Property. Brannan has not performed under the Letter Agreement.

Plaintiff Smith owned two properties: a house in Draper and a condominium in Murray (the "Smith Properties"). Brannan asked Smith to pledge his properties to secure the $706,000 Creekside Funding loan for four weeks. In exchange, Brannan would give Smith $40,000. Brannan never paid Smith the $40,000. Rutter, Brannan, and K&D executed a Pledge of Collateral Agreement which included an obligation to indemnify Smith if he incurred any loss in the transaction. The loan which the properties were used to secure was not paid and the properties were foreclosed in June 2001.

As part of the fund raising process, individuals were shown two letters allegedly from Bank One (the "Bank One Letters"). The August 22 Letter stated:

> To:   Whom it May Concern
> Re:   Mad Trax Group, LLC
>     MadTrax Group, LLC (the "Company") and its individual members Mark Robbins and Marc Jenson (the "Members") will be depositing $165,000,000 into Bank One, Utah NA. The funding is coming from a loan agreement between MadTrax Group, LLC, a Utah limited liability company and Arimex Investments, LTD., a Bahamian corporation. The sum of $165,000,000 will be deposited into

an interest bearing account in the name of the Company and managed by its Members

      Should you have any questions with respect to this matter, please contact the Undersigned.

                              Ben Lightner
                              Wealth Advisor
                              Private Banking Group

The October 19 Letter stated:

Union Bank of Switzerland
Bahnhofstrasse 45
Zurich, 8001
Switzerland 41-1-234-1111

Re:    MadTrax Group, LLC

Ladies and Gentlemen:

MadTrax Group, LLC (the "Company") and its individual members collectively have on deposit with several financial institution [sic] including cash, government bonds and marketable securities valued in excess of $971,716,000 of which $165,000,000 will be deposited into Bank One, Utah NA (Bank One). Bank One has received copies of all personal financials, tax returns, marketable securities, government bonds, and pertinent documents to conclude and verify the value of the MadTrax Group, LLC and its individual members.

Upon the execution of the Agreement between the Company and the Union Bank of Switzerland, Bank One will establish a $100,000,000 ("Custodial Account") in accordance with the provisions of the Agreement and the usage of the Companies [sic] funds to activate the account.

      Should you have any questions with respect to this matter, please contact the undersigned.
                              Benjamin M Lightner
                              Bank One, Utah NA
                              Wealth Advisor
                              (801) 481-5020

      Plaintiff Rutter was shown the August Letter and relied upon it before pledging the Lehi Property. While there is conflicting evidence on this issue, there is sufficient evidence for a jury

to find that Plaintiff Rutter was shown the October Letter before making the second pledge of the Lehi Property. Plaintiff Fisher did not see the Letters, but relied on statements from Plaintiff Rutter about the Letters. Plaintiff Smith saw both the August Letter and the October Letter and relied upon those letters in making his determination to pledge his properties.

As the funds were being raised to buy out Cherokee & Walker's interest in the Bike Companies, Robbins continued to pursue the acquisition of Mongoose. As part of the agreement to purchase Mongoose, the Bike Companies were going to acquire a loan of $165 million. $65 million would be used to purchase Mongoose and the remaining $100 million would be used to participate in high yield bank trades.

### III. DISCUSSION

A.   RICO CLAIMS

"The elements of a civil RICO claim are (1) investment in, control of, or conduct of (2) an enterprise (3) through a pattern (4) of racketeering activity."[6] Racketeering activity is defined "as any 'act which is indictable' under federal law and specifically includes mail fraud, wire fraud and racketeering."[7]

Defendant Robbins makes various arguments as to why Plaintiffs' RICO claims should be dismissed. The Court will focus its attention on whether Plaintiffs have presented sufficient evidence of a pattern of racketeering activity.

---

[6] *Tal v. Hogan*, 453 F.3d 1244, 1261 (10th Cir. 2006).

[7] *Id*. (quoting 18 U.S.C. § 1961(1)(B)).

A pattern of racketeering requires at least two acts of racketeering activity in a ten-year period.[8]  Furthermore, to show a pattern of racketeering activity, a RICO plaintiff must also satisfy two additional elements: a relationship between the predicates and the threat of continuing activity.[9]

A plaintiff may demonstrate continuity by establishing either closed-ended or open-ended continuity.[10]

> [C]losed-ended continuity requires a series of related predicates extending over a substantial period of time.  Predicate acts extending over a few weeks or months are insufficient.  Open-ended continuity requires a clear threat of future criminal conduct related to past criminal conduct.[11]

"A single scheme to accomplish one discrete goal, directed at a finite group of individuals, with no potential to extend to other persons or entities, rarely will suffice to establish a threat of continuing activity."[12]

It is unnecessary to decide whether the period of activity constitutes a "substantial period of time" because Plaintiffs have not produced sufficient evidence of any threat of "future criminal conduct."  "Plaintiffs allege what is actually a closed-ended series of predicate acts constituting a single scheme [the solicitation of funds] to accomplish a discrete goal [obtaining $100 million to participate in high yield bank trades] directed at a finite group of individuals [a

---

[8] 18 U.S.C. § 1961(5).

[9] *H.J. Inc. v. Northwestern Bell Tel. Co.*, 492 U.S. 229, 239 (1989).

[10] *Id*. at 241.

[11] *Phelps v. Wichita Eagle-Beacon*, 886 F.2d 1262, 1273 (10th Cir. 1989) (quotation marks and citation omitted).

[12] *Erikson v. Farmers Group, Inc.*, 151 Fed.Appx. 672, 678 (10th Cir. 2005).

limited number of investors, including Plaintiffs] 'with no potential to extend to other persons or entities'"[13] The evidence simply shows that Defendants engaged in actions to solicit funds to buy out Cherokee & Walker's interest in the Bike Companies. Once that occurred, Defendants sought to purchase Mongoose and, with that purchase, gain access to $100 million to be used for high yield bank trades. There is no evidence that any activity would continue once that $100 million was obtained. Indeed, there is no evidence to suggest that the scheme continued once the effort to obtain Mongoose failed. Plaintiffs suggest that there is a threat of repetition of the same types of activities by these Defendants. Plaintiffs, however, have produced no evidence to support this supposed threat of repetition. This is simply a single scheme to accomplish one discrete goal, directed at a finite group of individuals, with no potential to extend to other persons or entities.

For these reasons, the Court finds that Defendant Robbins is entitled to summary judgment on Plaintiffs' Section 1962(c) claim. Plaintiff also asserts a RICO conspiracy claim. As Plaintiffs have set forth no viable claim under Section 1962(c), their RICO conspiracy claim cannot stand.[14] This ruling applies to all other Defendants as well as Defendant Robbins.

B.    CIVIL CONSPIRACY

Under Utah law, Plaintiffs must show five elements in order to prove a civil conspiracy: (1) a combination of two or more persons; (2) an object to be accomplished; (3) a meeting of the

---

[13]*Boone v. Carlsbad Bancorporation, Inc.*, 972 F.2d 1545, 1556 (10th Cir. 1992) (quoting *Sil-Flo, Inc. v. SFHC, Inc.*, 917 F.2d 1507, 1516 (10th Cir. 1990)).

[14]*See Tal*, 453 F.3d at 1270 ("Because Appellants have failed to allege a sufficient claim under subsections (b) or (c), their subsection (d) conspiracy claim fails as a matter of law.").

minds on the object or course of action; (4) one or more unlawful, overt acts; and (5) damages as a proximate result thereof.[15]

After reviewing the evidence presented, the Court finds that there are genuine issues of material fact which preclude the Court from entering summary judgment for Defendant Robbins on Plaintiffs' civil conspiracy claim.

## VII.  CONCLUSION

It is therefore

ORDERED that Defendant Robbins' Motion for Summary Judgment (Docket No. 125) is GRANTED IN PART AND DENIED IN PART as set forth above.  It is further

ORDERED that Plaintiffs' Motion to Amend (Docket No. 161) is GRANTED.  It is further

ORDERED that Bank One's Motion for Summary Judgment (Docket No. 124) and Bank One's Motion for Separate Trial (Docket No. 114) are DENIED AS MOOT.

DATED   July 23, 2008.

BY THE COURT:

_____
TED STEWART
United States District Judge

---

[15] *Waddoups v. Amalgamated Sugar Co.*, 54 P.3d 1054, 1064 (Utah 2002).